UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

EMPIRE PIPELINE, INC., and
NATIONAL FUEL GAS SUPPLY
CORPORATION,

                              Plaintiffs,

        v.                                              **DECISION AND ORDER**

                                                        17-CV-141S

TOWN OF PENDLETON,

                              Defendant.

## I.    Introduction

Before this Court is Plaintiffs' Motion for Partial Summary Judgment (Docket No. 10) arguing that the Natural Gas Act, 15 U.S.C. §§ 717, et seq., and FERC regulations preempt Defendant Town of Pendleton's ("Town") ordinance restricting Plaintiffs' proposed gas pipeline project, construction and operation of a compression station in Pendleton.  They seek declaratory judgment or an injunction against enforcement of the Town's zoning ordinance against their gas pipeline project.

Plaintiffs also moved for expedited hearing of this motion (Docket No. 11), which was granted (Docket No. 13).

Responses to the summary judgment motion initially were due on April 3, 2017, with replies due April 7, 2017 (id.).  Defendant responded (Docket No. 14), Plaintiffs replied (Docket No. 15).  Defendant then submitted a sur-reply (Docket No. 16) but Plaintiffs moved to strike the sur-reply (Docket No. 18).  After briefing on the motion to strike (Docket Nos. 19, 20), this Court denied the motion to strike (Docket No. 39).

The parties meanwhile supplemented the motion for summary judgment and defense opposition (Docket Nos. 21, 22, 24, 25, 26, 28, 29, 31, 35, 36, 44; see Docket Nos. 23, 27, 34 (Orders granting leave to supplement); cf. Docket No. 30 (Order denying supplemental motion, Docket No. 28)) supplying and updating authorities.   On October 10, 2018, this Court granted leave Plaintiffs' motion to supplement and deemed briefing completed (Docket No. 38; see also Docket No. 39, deeming briefing completed). On May 8, 2020, Plaintiffs moved to further supplement authorities (Docket No. 40), which this Court granted (Docket No. 41).  Final responses to the supplemental authorities were due by May 26, 2020, and Plaintiffs' reply were due June 3, 2020 (id.).  Defendant filed its supplemental submission (Docket No. 42) and Plaintiffs replied (Docket No. 43). Plaintiffs on July 10, 2020, moved to further supplement authorities to update a previously cited case (Docket No. 44).  With the motion thus fully briefed, it was submitted without oral argument.

Upon consideration of the above-cited briefing and the arguments made therein and for the reasons stated herein, Plaintiffs' Motion for Partial Summary Judgment (Docket No. 10) is **granted in part**, granting declaratory judgment to them.

## II.   BACKGROUND

### A.  Complaint

This is an action commenced by a natural gas transmission company and a natural gas supplier (Docket No. 1, Compl.).  This is an action for declaratory judgment and permanent injunction under the Natural Gas Act (id. ¶ 4).  In March 17, 2015, National Fuel Gas Supply ("National Fuel") filed an application with the Federal Energy Regulatory Commission ("FERC") seeking an Order and Certificate of Public Convenience and

Necessity ("Certificate") for the construction, operation, and maintenance of a new pipeline and compression facilities from McKean County, Pennsylvania, to Niagara County, New York (id. ¶ 7).   Included with this pipeline project is construction of a compressor station in the Town of Pendleton, New York ("Town") (id. ¶ 9).   The FERC granted the Certificate on February 3, 2017, National Fuel Gas Supply Corp., 158 FERC ¶ 61,145, 2017 WL 496277 (2017) (id. ¶¶ 8, 99, Ex. A; see also Docket No. 10, Pls. Atty. Aff. ¶ 3, Ex. A; id., Pls. Statement ¶ 3).   Near the end of the Certificate, FERC declared

> "Commenters, including the Town of Pendleton, state that local land use laws do not allow for development of the Pendleton Compressor Station at the proposed location. **We note that any state or local permits issued with respect to the jurisdictional facilities authorized herein must be consistent with the conditions of this certificate.** We encourage cooperation between interstate pipelines and local authorities. **However, this does not mean that state and local agencies, through application of state or local laws, may prohibit or unreasonably delay the construction or operation of facilities approved by this Commission.**"

(Docket No. 1, ¶ 10, Ex. A, 158 FERC ¶ 61,145, Certificate ¶ 194, 2017 WL 496277, at *47 (emphasis added)).   After concluding that the project (if consistent with Plaintiffs' application) would not affect the quality of the environment (id., Ex. A, 158 FERC ¶ 61,145, Certificate ¶ 197, 2017 WL 496277, at *47), FERC issued the Certificate conditioned upon Plaintiffs completing authorized construction within two years of date of the Certificate; compliance with applicable FERC regulations; compliance with environmental conditions; and executing contracts (id., Ex. A, 158 FERC ¶ 61,145, Certificate, Commission Ordering Paragraph (C), 2017 WL 496277, at *48).

Plaintiffs allege that this Certificate, among other things, bars defendant Town from prohibiting, interfering with, or unreasonably delaying the construction or operation of the pipeline project (id. ¶ 11).   Plaintiffs assert that the Town opposed construction (id. ¶¶ 60-

3

64), delaying the siting, construction, and operation of the compression station (id. ¶¶ 74-75, 77-90, 93-98, 105-12).  They allege that the Town building inspector refused to act on their building permit application (id. ¶¶ 93-98) and, after plaintiffs obtained the Certificate, the Town denied the building permit (id. ¶¶ 105-12).

The First Claim seeks a declaratory judgment that National Fuel need not comply with the Town Code as they related to siting, constructing, or operating the compression facility as the Code was interpreted by the Town or declare "that the Town Building Inspector must issue a Building Permit for the Facility and Project in accordance with and consistent with the Certificate" (id. ¶¶ 121, 114-21, WHEREFORE Cl. ¶ (a), (b)).  The Second Claim seeks an injunction against enforcing the Town Code and future attempts to interfere with, delay, or prevent the siting, construction, or operation of the compression station (id. ¶¶ 130, 131, 123-31, WHEREFORE Cl. ¶ (c)).  Plaintiffs also seeks continued jurisdiction over this matter "to address any future actions by defendant that contravene this Court's Order, the Certificate or the Natural Gas Act" (id., WHEREFORE Cl. ¶ (d)) and direct and consequential damages from the wrongful enforcement of the Town Code (id., WHEREFORE Cl. ¶ (e)).

The Town answered (Docket No. 7).  The Town raised an affirmative defense that this claim was not ripe (id. ¶¶ 132-36) because Plaintiffs entered a stipulation with the New York State Department of Environmental Conservation ("DEC") agreeing to allow the DEC to determine Plaintiffs' application for a Clean Water Act Section 401 Water Quality Certification by April 7, 2017 (id. ¶ 134, Ex. B).  The Town argues that Plaintiffs' claims are not ripe until they obtain the Clean Water Act Water Quality Certification or a waiver of the requirement (id. ¶ 135).  Alternatively, the Town contends that Plaintiffs had

not obtained all federal approvals and had appealed to the FERC conditions under the Certificate, thus the Town argues that this Court should abstain from deciding this case until the FERC had decided Plaintiffs' appeal (id. ¶¶ 137-41, Ex. C).  The Town also asserts that Plaintiffs failed to exhaust administrative remedies by not appealing the denial of the building inspector to the Town's Zoning Board of Appeals or seeking a special exception permit (id. ¶¶ 142-50).

Plaintiffs obtained the Certificate in February 2017 and appealed a month later (id., Ex. C).  The appeal sought reconsideration of rate determination (id., Ex. C, at 2-3).  They also sought clarification whether the DEC's failure to issue a decision on their application for the Clean Water Act Water Quality Certification resulted in a waiver of that requirement (id. at 3-4, 17-26).  Plaintiffs also contend that they were not required to seek state law permits (id. at 3-4), arguing that the state requirements were preempted by federal law (id. at 4-17).

Magistrate Judge Schroeder then ordered the parties to submit proposed deadlines for a Case Management Order (Docket No. 9).  Plaintiffs moved for summary judgment on the same day (Docket No. 10).  While their motion was pending, plaintiffs also submitted a proposed Case Management Order (Docket No. 17); a Scheduling Order or Case Management Order has not been entered.

### B.  Plaintiffs' Motion for Partial Summary Judgment (Docket No. 10)

Plaintiffs moved for partial summary judgment (Docket No. 10).  They argue that the Natural Gas Act and the FERC preempts the Town Code and its restrictions on the construction and operation of the compression station (id., Pls. Memo. at 12-23).  They

seek summary judgment for a declaration of this preemption (id. at 12-20) and an injunction against the Town (id. at 21-23).  If granted, the issues remaining for adjudication would be any monetary damages Plaintiffs incurred (see Docket No. 1, Compl., WHEREFORE Cl. ¶ (e)).

The material facts are not in dispute (the Town did not submit a Statement of Facts, although the Town's Memorandum of Law includes a statement of fact, Docket No. 14, Def. Memo. at 11-21; see also Docket No. 16, Def. Sur-Reply Memo. at 3-5).  Plaintiffs engage in the transportation of natural gas in interstate commerce and are regulated by FERC (Docket No. 10, Pls. Statement ¶ 1).  Plaintiffs jointly filed an application with the FERC for a Certificate of Public Convenience and Necessity for the Northern Access 2016 Project (id. ¶ 2).  FERC approved the project, including construction of the compressor station in Pendleton (id. ¶¶ 3-5).  The Town intervened in the FERC proceeding shortly after Plaintiffs applied (id. ¶ 9).  The Town argued that alternative sites outside of Pendleton should be chosen for the compression station (id. ¶ 11).  In granting the Certificate, FERC disagreed and found that the compression station should be built on the proposed Killian Road site in Pendleton (see id. ¶ 12), deeming the alternative sites proposed "were more severely constrained for space or had considerable additional resource impacts, including proximity to residences, wetland impacts, and forest-clearing," (Certificate ¶ 101; Docket No. 10, Pls. Statement ¶ 13; see also Docket No. 10, Pls. Statement ¶¶ 14-16 (FERC considering merits of alternative sites)).  FERC considered other environmental concerns for the Pendleton site (see Docket No. 10, Pls. Statement ¶¶ 17 (zoning issues), 18-25, citing Certificate ¶¶ 125 (zoning), 194 (local land

use laws), 127-28 (noise), 116 (wetlands), and Docket No. 10, Pls. Atty. Aff. Ex. B, FERC Environmental Assessment, at 92-97, 95).

Aware of the Certificate, the Town nevertheless denied a building permit for the compressor station (Docket No. 10, Pls. Statement ¶¶ 26-27).  Without a permit, Plaintiffs contend that the Town could issue a stop work order with potential penalties and incarceration (id. ¶ 28).  Plaintiffs declare that the Town's interpretation and application of its Code conflict with the Certificate (id. ¶ 29).

Plaintiffs note that FERC issued the Certificate after conducting an environmental assessment of the site (Docket No. 10, Pls. Atty. Aff. ¶ 6, Ex. B).  This assessment considered the water resources implicated by the project (id., Ex. B at 34-54) as well as above ground facility alternatives for the Pendleton compressor station (id. at 166-75).

Defendant Town contends that the Natural Gas Act does not provide FERC with the authority to determine permissible land use under the Town's zoning Code (Docket No. 14, Def. Memo. at 21-24).   The Town notes that the Natural Gas Act does not expressly preempt matters other than the siting, construction, expansion, or operation of liquid natural gas terminal (id. at 25, quoting 15 U.S.C. § 717b(e)(1)).  Instead, conflict preclusion should apply where the federal and local interests clash (id. at 26-27).  Citing Oneok, Inc. v. Learjet, 575 U.S. 373 (2015), the Town concludes that field preemption was rejected (id. at 29-32).  The Town also concludes that the Natural Gas Act does not occupy the field of local regulation of natural gas facilities (id. at 32-33).  The Town urges this Court abstain pending final resolution by the FERC and agencies determining non-FERC approvals (such as the DEC and water quality permits) (id. at 33-36), arguing that the parallel federal agency proceedings are similar to a parallel state judicial proceeding

7

for <u>Colorado River</u> abstention, <u>Colorado River Water Conservation District v. United States</u>, 424 U.S. 800 (1976) (<u>id.</u> at 33-36).

The Town also argues that this case is not ripe because Plaintiffs lack all necessary federal approvals for the compression station, in particular both sides' appeals to the FERC (<u>id.</u> at 36-38) and approvals from New York State (<u>id.</u> at 38-39) (presumably the Clean Water Quality certification from the DEC). The Town notes that the FERC Certificate is not final given the pending appeal (<u>id.</u> at 38). Also, Plaintiffs did not challenge the denial of the building permit by appeal to the Town Zoning Board of Appeal, hence not administratively exhausting that remedy (<u>id.</u> at 39).

In their reply (Docket No. 15), Plaintiffs deny that this Court should abstain because they were injured and would continue to be until the compression station issue is resolved (<u>id.</u> at 1-3). They contend the dispute is ripe because all pre-construction conditions did not need to be met before this action could be filed (<u>id.</u> at 4-5, citing <u>Pacific Gas & Elec. Co. v. State Energy Res. Conserv. and Dev. Comm'n</u>, 461 U.S. 190, 198 (1983)). Furthermore, they contend that this building permit dispute did not need to be exhausted before the Pendleton Zoning Board of Appeal because the Natural Gas Act does not require exhaustion before seeking federal judicial relief (<u>id.</u> at 5). Plaintiffs have not waived their right to appeal (<u>id.</u> at 5 n.6) and later appealed (<u>see</u> Docket No. 24, Pls. Letter motion of Nov. 30, 2017, at 5). Further, there was no parallel proceeding to justify abstention (Docket No. 15, Pls. Reply Memo. at 6-7). They next argue that conflict preemption applies to have the Natural Gas Act preempt the Town Code because Congress preempted the field (<u>id.</u> at 7-10), arguing that the Town misinterprets <u>Oneok, Inc.</u>, <u>supra</u>, 575 U.S. 373 (<u>id.</u> at 8-9).

8

In the Town's Sur-Reply (Docket No. 16), the Town urges this Court to consider facts it raises in its Memorandum as establishing issues of material fact to deny Plaintiffs' motion for summary judgment (id. at 1-2), notwithstanding this Court's Local Rule 56. The Town points out that the DEC (on April 7, 2017) denied Plaintiffs' a water quality certification during the pendency of this motion, therefore this action is not ripe (id. at 2, Ex. A). The Town disputes Plaintiffs' conclusion that the Certificate authorized the compressor station in Pendleton (id. at 3-4). The Town disputes factual assertions of Plaintiffs, such as Plaintiffs would face penalties if they proceeded with construction without the building permit and the fact Plaintiffs have pending a rehearing request before FERC (id. at 4-5), although the Town has not presented a counterstatement of fact. The Town argues that Plaintiffs do not have a final approval authorizing construction since they sought a rehearing before FERC (id. at 5), thus this case is not ripe.

The Town next distinguishes this Court's decision in National Fuel Gas Supply v. Town of Wales, No. 12CV34, 2013 WL 5739033 (W.D.N.Y. Oct. 22, 2013) (Skretny, C.J.) (hereinafter "Town of Wales"), since the zoning permit in Wales sought to regulate the noise levels at National Fuel's proposed facility when noise levels were considered by FERC and thus preempted local control, whereas the Pendleton building permit considered siting the compression station (id. at 5-7). The Town continues to argue that this case was not ripe because Plaintiffs did not have authorization for construction (id. at 7-9). The Town relies upon the decision from the Northern District of New York in Constitution Pipeline Co., LLC v. New York State Dep't of Envtl. Conserv. (Delaware Riverkeeper Network), No. 1:16CV568 (N.D.N.Y. Mar. 16, 2017), where that court found a similar natural gas company suffered no actual or imminent injury to have standing upon

the DEC's denial of a similar water quality certification for Constitution Pipeline's project (id. at 7-8, Ex. B).

The extensive supplementation of authorities in this case followed discussing the status of Plaintiffs' Clean Water Act application with the DEC and whether such authorization is necessary.   Defendant Town first cited the Second Circuit decision Constitution Pipeline v. New York State Dep't of Envtl. Conserv. (Stop the Pipeline), 868 F.3d 87 (2d Cir. 2017), cert. denied, 584 U.S. ___, 138 S.Ct. 1697 (2018) (cf. Docket No. 16, Def. Sur-Reply at 7, Ex. B, Constitution Pipeline (Delaware Riverkeeper Network)), that the DEC could uphold clean water quality standards and block this gas pipeline project (Docket Nos. 21, 22).

Plaintiffs moved to respond (Docket No. 24, Pls. Motion for Leave to Supplement, cf. Docket No. 27, Order granting leave) distinguishing the importance of the Second Circuit's Constitution Pipeline (Stop the Pipeline) decision for this case (Docket No. 24, Pls. Memo. at 1-3).   They cite to a FERC order regarding DEC waiver of Section 401 of Clean Water Act holding that the DEC cannot block a FERC-approved project (id. at 3-4, Ex. B, citing 160 FERC ¶ 61,065).   They also argue that the New York State Supreme Court decided the condemnation sought in National Fuel v. Schueckler, Index No. 45092 (N.Y. Sup. Ct. Allegany County May 26, 2017), rev'd, 167 A.D.3d 128, 88 N.Y.S.3d 305 (4th Dep't 2018), rev'd, No. 29, ___ N.Y.3d ___, ___ N.Y.S.3d ___, 2020 WL 3453939 (N.Y. June 25, 2020) (cf. Docket No. 44, Pls. Motion to Supplement Authority), after National Fuel received a FERC Certificate; that court did not await other proceedings or decline to act on ripeness grounds (Docket No. 24, Pls. Memo. at 4-5, Ex. D).   The Supreme Court there rejected arguments now raised by the Town that the action was

premature, that National Fuel lacked standing and that the FERC Certificate there was only conditional which National Fuel had yet to meet all conditions (id. at 4-5, Ex. D). Plaintiff Empire Pipeline states that it appealed the denial of the building permit to the Pendleton Zoning Board of Appeals with that appeal stayed pending resolution of this case (id. at 5-6, Ex. E).

The Town responded to the motion for leave to supplement asserting that Plaintiffs' arguments were illogical and irrelevant, distinguishing Plaintiffs' discussion of Constitution Pipeline (Stop the Pipeline) (Docket No. 25, Def. Memo. at 2-4). Plaintiffs replied that the Town distorted and misquoted Constitution Pipeline and distorts Plaintiffs' standing position (Docket No. 26, Pls. Memo.). They deny that this case is about the DEC's denial of water quality certification but about preventing the Town from vetoing the FERC-approved project (id. at 3).

Plaintiffs further supplemented by noting another New York Supreme Court, Niagara County, action by Empire Pipeline against the DEC, Matter of Empire Pipeline Inc. v. NYSDEC, Index No. E16542/2017 (N.Y. Sup. Ct. Niagara County Mar. 30, 2018) (Docket No. 31, Pls. Atty. Aff. Ex. A[1]), rejecting arguments the Town now raised in opposition to this case. Justice Daniel Furlong held that the state court had subject matter jurisdiction and, relying upon New York Court of Appeals precedent, that the DEC permit was preempted by federal law (id., Pls. Atty. Aff. ¶ 10 and page 3 n.2, Ex. A), see also Matter of Niagara Mohawk Power Corp. v. New York State Dep't of Envtl. Conserv., 82 N.Y.2d 191, 604 N.Y.S. 18 (1993) (preemption by the Federal Power Act, 16 U.S.C.

---

[1] See Docket Nos. 28 (arguments in letter format); cf. Docket No. 30, text Order denying leave to file letter motion, Docket No. 28, without prejudice.

§§ 791a, et seq.).  Plaintiffs note that the DEC here waived its opposition to issuing the water quality certification by being late and that issue then was both before FERC (later referred to as the "Waiver Order," discussed below) and the DEC's purported denial was on appeal before the Second Circuit (Docket No. 31, Pls. Atty. Aff. at page 2 n.1), discussed below in a further supplemental filing (see Docket No. 40, Pls. Atty Decl. ¶ 2, Ex. C; National Fuel v. Dep't of Envtl. Conserv., 761 F. App'x 68 (2d Cir. 2919) (summary Order)).  The Town opposed, arguing the irrelevance of the Niagara County case to the case at a bar (Docket Nos. 29 (also in letter format), 32).  Plaintiffs replied that Niagara County case was analogous (Docket No. 33).

Plaintiffs then submitted further briefing discussing the FERC Waiver Order, Order on Rehearing and Motion for Waiver Determination under Section 401 of the Clean Water Act, 164 FERC ¶ 61,084, 2018 WL 3751716 (Aug. 6, 2018) ("Waiver Order"), wherein the agency asserted federal exclusivity (consistent with Town of Wales) (Docket No. 35, Pls. Atty. Aff. Ex. A).  Plaintiffs argue that this Waiver Order reaffirmed preemption that supports summary judgment to Plaintiffs here.  That Order held that National Fuel need not obtain a water quality certification from the DEC because the DEC waived its delegated authority through an untimely action.  (Docket No. 35, Pls. Atty. Affirm. Ex. A.) FERC also rejected the other arguments the Town now raises, with FERC asserting exclusive federal jurisdiction over the pipeline project (Docket No. 35, Pls. Atty. Aff. ¶ 4, Ex. A, Waiver Order, 164 FERC ¶ 61,084, ¶¶ 49-50, 2018 WL 5739033, at *12).  FERC then rejected the Town's objections to siting the compression station, noting the Commission's consideration of alternative sites (id., Ex. A, Waiver Order, 164 FERC ¶ 61,084, ¶¶ 84-85, 2018 WL 5739033, at *21).  FERC also addressed the Town's noise

objections, rejecting application by the Town of state noise standards rather than federal standards (id., Ex. A, Waiver Order 164 FERC ¶ 61,084, ¶¶ 86-88, 2018 WL 5739033, at *22).  The Town responded that the National Fuel-DEC dispute was not final, hence this Court should not act because the matter was not yet ripe (Docket No. 36).

Plaintiffs then updated the Niagara County case, stating that National Fuel there received summary judgment (Docket No. 40, Pls. Atty. Decl. Ex. A).  FERC also issued an order denying rehearing, 167 FERC ¶ 61,007, 2019 WL 1981663 (Apr. 2, 2019) (id., Pls. Atty. Aff. ¶ 18, Ex. B).  Plaintiffs also reported the recent decision of the Second Circuit, National Fuel v. Dep't of Envtl. Conserv., 761 F. App'x 68 (2d Cir. 2019) (summary Order), that they contend reached a similar result as this Court did in Town of Wales (id., Pls. Atty. Decl. ¶ 2, Ex. C; id., Pls. Memo. at 6).  Plaintiffs cite the First Circuit's decision in Algonquin Gas Transmission, LLC v. Weymouth, Massachusetts, 919 F.3d 54 (1st Cir. 2019), reinforcing their arguments of conflict preemption; the First Circuit rejected the Town of Weymouth's attempt to halt FERC-approved compression stations by denying permits (id., Pls. Memo. at 6-8).

Characterizing this supplement as re-argument of Plaintiffs' case, the Town replied in similar fashion (Docket No. 42).  The Town contended that Plaintiffs still awaited finality on the water quality certification from the DEC, contested before the FERC and then the D.C. Circuit (id. at 1-4).  The Town reasserted that the FERC's Certificate "is not a final decision until the conditions precedent to the Order are satisfied, and until National Fuel so certifies to FERC" (id. at 2 n.1; see Docket No. 14, Def. Town Memo. at 38).  The Town then distinguished Algonquin Gas Transmission and the Niagara County Supreme Court decision in National Fuel v. DEC (Docket No. 42, Town Supp'al Memo. at 5-8, 4).

13

Plaintiffs replied that the Waiver Order was not appealed or stayed (Docket No. 43, Pls. Reply Memo. at 1-3; id., Pls. Atty. Decl. ¶¶ 2-3).  They contended that local land use ordinances are subject to federal preemption (Docket No. 43, Pls. Reply Memo. at 3-5), explaining Oneok and distinguishing the Town's construction (id. at 4-5).  They also point out that the Town conceded conflict preemption and hence is opposite to its argument that local land use ordinances are not subject to preemption (id. at 5-6).  Plaintiffs argued that Justice Furlong's decision in Matter of Empire Pipeline v. NYSDEC, Index No. E161542/2017, is relevant because it eliminated one roadblock to Plaintiffs' project (id. at 6).

### C.  FERC Proceedings

To understand the administrative issues in this case, analysis of the administrative proceedings and some ancillary to Plaintiffs' gas pipeline project is in order.  Plaintiffs applied to construct the pipeline project (including compression stations) and the FERC issued the Certificate, Order Granting Abandonment and Issuing Certificates, Nos. CP15-115-000, CP15-115-001, 158 FERC ¶ 61,145, 2017 WL 496277 (Feb. 3, 2017) (Docket No. 1, Compl. Ex. A), stay denied, 160 FERC ¶ 61,043, 2017 WL 3835866 (Aug. 31, 2017).  According to the FERC's environmental assessment, Plaintiffs had to obtain numerous permits and approvals from various governments, including water quality certification from the DEC (Docket No. 10, Pls. Ex. B, FERC Environmental Assessment at 19-21, 21).  The list of permits, while not comprehensive, did not include town or zoning permits (see id. at 19).

Plaintiff National Fuel sought reconsideration of rate determination in the Certificate and sought clarification or a rehearing, National Fuel Gas Request for

14

Reconsideration and Clarification, Nos. CP15-115-000, CP15-115-001 (Mar. 3, 2017) (Docket No. 7, Ans., Ex. C). FERC decided this with other applications in 2018, 164 FERC ¶ 61,084, 2018 WL 3751716 (Aug. 6, 2018).

The Town, with other applicants, also sought a stay of the Certificate, which the FERC denied on August 31, 2017, 160 FERC ¶ 61,043, 2017 WL 3835866 (see also Docket No. 14, Town Memo. in Opposition Ex. G (Town's Petition for Rehearing and Request for Stay to FERC). FERC issued this denial of the Town (with affected landowners who sought the stay) because they failed to explain "why they would suffer irreparable injury in the absence of a stay or otherwise address any of the factors used by the [FERC] to evaluate requests for stay," 160 FERC ¶ 61,043, ¶ 7, 2017 WL 3835866, at *2.

FERC then issued an Order on Rehearing and Motion for Waiver Determination under Section 401 of the Clean Water Act, 164 FERC ¶ 61,084, 2018 WL 3751716 (Aug. 6, 2018) (Waiver Order under Clean Water Act Sec. 401), denying rehearing sought by Plaintiffs (Docket No. 35, Pls. Atty. Aff., Ex. A; see Docket No. 40, Pls. Memo. at 3 ("Waiver Order")). DEC then sought reconsideration of the FERC Waiver Order, 167 FERC ¶ 61,007, 2019 WL 1981663 (Apr. 2, 2019) (Order denying Rehearing, No. 40, Pls. Atty. Decl. Ex. B). This Waiver Order addressed reconsideration and rehearing by National Fuel (id., 167 FERC ¶ 61,007, at ¶¶ 25-32, 2019 WL 1981663, at *6-8). DEC also has appealed the Waiver Order to the United States Court of Appeals for the Second Circuit, NYSDEC v. FERC, Case No. 19-1610, and that appeal is pending as of June 3, 2020, the date of the last filing in this case (see Docket No. 43, Pls. Atty. Decl. ¶ 6).

15

According to Plaintiffs, they did not appeal the FERC's Waiver Order (Docket No. 43, Pls. Atty. Decl. ¶ 2; id., Pls. Memo. at 1-2).  National Fuel has a separate appeal stayed before the D.C. Circuit, National Fuel Gas Supply Corp. v. FERC, Case No. 17-1143 (cf. Docket No. 42, Def. Town Supp'al Memo. at 1), on whether FERC's Secretary had the authority to issue Tolling Orders in 2017 when the FERC lacked a quorum (to forestall judicial review pending action by FERC) (Docket No. 43, Pls. Atty. Decl. ¶¶ 3-4; id., Pls. Memo. at 2; see also 164 FERC ¶ 61,084, ¶¶ 4-5, 2018 WL 3751716, at *1).  The D.C. Circuit stayed that appeal pending its decision in another appeal of FERC, Allegheny Defense Project v. FERC, No. 17-1098, National Fuel Gas Supply, supra, No. 17-1143, per curiam Order of Mar. 12, 2020.

On June 30, 2020, the D.C. Circuit decided Allegheny Defense Project, No. 17-1098, 2020 WL 3525547, with mandate pending on July 7, 2020.  There, the en banc D.C. Circuit held that FERC Tolling Orders were "not the kind of action on a rehearing application that can fend off a deemed denial and the opportunity for judicial review," 2020 WL 3525547, at *1, see id., at 14, 15; see also 15 U.S.C. § 717r(a) (rehearing exhaustion requirement before seeking judicial review of FERC action).  Accordingly, the National Fuel Gas parties were to move within 30 days of issuance of the Allegheny Defense Project mandate, National Fuel Gas Supply, supra, No. 17-1143, per curiam Order of Mar. 12, 2020, they would have to act by approximately August 7, 2020.  For purposes of this Court, the intricacies of the Natural Gas Act exhaustion provision of 15 U.S.C. § 717r(a) and FERC Tolling Orders are not necessary to decide this motion; thus, this Court did not delay this decision for the parties to await action on National Fuel's

Tolling Order appeal pending in the D.C. Circuit following the <u>Allegheny Defense Project</u> decision.

### III.   DISCUSSION

#### A.  APPLICABLE STANDARDS

##### 1.  Motion for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a).  A fact is "material" only if it "might affect the outcome of the suit under governing law," <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  A "genuine" dispute, in turn, exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party," <u>id.</u>  In determining whether a genuine dispute regarding a material fact exists, the evidence and the inferences drawn from the evidence "must be viewed in the light most favorable to the party opposing the motion," <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 158-59 (1970) (internal quotations and citations omitted).

Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  <u>Ford v. Reynolds</u>, 316 F.3d 351, 354 (2d Cir. 2003); Fed. R. Civ. P. 56(a).  The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists.  In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the nonmovant.  <u>Ford</u>, <u>supra</u>, 316 F.3d at 354.

The Local Civil Rules of this Court require that movant and opponent each submit "a separate, short, and concise" statement of material facts, and if movant fails to submit such a statement it may be grounds for denying the motion, W.D.N.Y. Loc. Civ. R. 56(a)(1), (2).  The movant is to submit facts in which there is no genuine issue, id. R. 56(a)(1), while the opponent submits an opposing statement of material facts as to which it is contended that there exists a genuine issue to be tried, id. R. 56(a)(2).  Each numbered paragraph in the movant's statement will be deemed admitted unless specifically controverted by a correspondingly numbered paragraph in the opponent's statement, id.  Absent such an opposing statement, the facts alleged by the movant are deemed admitted.  Each statement of material fact is to contain citations to admissible evidence to support the factual statements and all cited authority is to be separately submitted as an appendix to that statement, id. R. 56(a)(3).

Summary judgment is "a permissible vehicle in which to grant a permanent injunction," U.S. S.E.C. v. Monarch Funding Corp., No. 85 CIV. 7072(LBS), 1996 WL 348209, at *9 (S.D.N.Y. June 24, 1996) (citation omitted); Town of Wales, supra, 2013 WL 5739033, at *3.

### 2.  Declaratory Judgment

For declaratory judgment on a motion for summary judgment, as held in Town of Wales, supra, 2013 WL 5739033, at *3,

> "'[t]he merits' of such a motion 'may be properly asserted by the parties in a motion for summary judgment.'  Allstate Ins. Co. v. Martinez, No. 3:11 CV574 VLB, 2012 WL 1379666, at *4 (D.Conn. Apr.20, 2012). '[D]istrict courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise

18

satisfies subject matter jurisdictional prerequisites.' <u>Wilton v. Seven Falls Co.</u>, 515 U.S. 277, 282 (1995)."

Under the Declaratory Judgment Act, "any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration," 28 U.S.C. § 2201(a). "It is well-settled that the trial court's decision to exercise declaratory jurisdiction is a discretionary one," <u>Sheet Metal Div. v. Local 38 of the Sheet Metal Workers Int'l Ass'n</u>, 208 F.3d 18, 22 (2d Cir. 2000); <u>Islander E. Pipeline Co., L.L.C. v. Blumenthal</u>, 478 F. Supp. 2d 289, 297 (D. Conn. 2007).

### 3. Natural Gas Act and Preemption

State regulations that interfere with FERC's regulatory authority under the Natural Gas Act over the transportation of natural gas are preempted, <u>Schneidewind v ANR Pipeline Co.</u>, 485 U.S. 293, 310 (1988); <u>see</u> <u>Dominion Transmission, Inc. v. Summers</u>, 723 F.3d 238, 245 (D.C. Cir. 2013) (state and local regulation is preempted by the Natural Gas Act to the extent it conflicts with federal regulation or would delay the construction and operation of a facility approved by the FERC) (<u>see</u> Docket No. 1, Compl. ¶ 10, Ex. A, FERC Certificate ¶ 194 & n.267). "When a state regulation 'affect[s] the ability of [FERC] to regulate comprehensively . . . the transportation and sale of natural gas, and to achieve the uniformity of regulation which was an objective of the Natural Gas Act' or presents the 'prospect of interference with the federal regulatory power,' then the state law may be pre-empted even though 'collision between the state and federal regulation may not be an inevitable consequence,'" <u>Schneidewind</u>, <u>supra</u>, 485 U.S. at 310, quoting <u>Northern Natural Gas Co. v. State Corp. Comm'n of Kan.</u>, 372 U.S. 84, 91-92 (1963)). The Second Circuit in <u>National Fuel Gas v. Public Service Commission</u>, 894 F.2d 571, 579 (2d Cir. 1990)) held that New York's environmental regulations of plaintiff's FERC-approved

project were preempted under <u>Schneidwind</u>, <u>see</u> 485 U.S. at 293; <u>Islander E. Pipeline v.</u>

<u>Blumenthal</u>, <u>supra</u>, 478 F. Supp. 2d at 294.

Plaintiffs argue that the United States Constitution's Supremacy Clause requires

the Natural Gas Act (and FERC proceedings) preemption of the Town Code.   The

Supremacy Clause states

> "the Constitution, and the Laws of the United States which shall be made in
> Pursuance thereof; and all Treaties made, or which shall be made, under
> the Authority of the United States, shall be the supreme Law of the Land;
> and the Judges in every State shall be bound thereby, any Thing in the
> Constitution or Laws of any State to the Contrary notwithstanding."

U.S. Const. art. VI, cl. 2.   Congress may pre-empt, "<u>i.e.</u>, invalidate a state law through

federal legislation," <u>Oneok</u>, <u>supra</u>, 575 U.S. at 376, and may do so implicitly, <u>id.</u> at 377;

<u>see</u> <u>Sprietsma v. Mercury Marine, a Div. of Brunswick Corp.</u>, 537 U.S. 51, 64 (2002).

Preemption may occur through "field," that is, Congress intends to foreclose any state

regulation in the area, or "conflict," where "compliance with both state and federal law is

impossible" or where "the state law 'stands as an obstacle to the accomplishment and

execution of the full purposes and objectives of Congress,'" <u>California v. ARC America</u>

<u>Corp.</u>, 490 U.S. 93, 100, 101 (1989) (quoting <u>Hines v. Davidowitz</u>, 312 U.S. 52, 67

(1941)); <u>Oneok</u>, <u>supra</u>, 575 U.S. at 377.   The First Circuit in <u>Algonquin Gas Transmission</u>

noted that conflict preemption is the narrower ground than field preemption, 919 F.3d at

63.

4.   Ripeness

The Town argues that this action is not yet ripe (Docket Nos. 14, Def. Memo. at

36-28; 16, Def. Sur-Reply at 2, 5).   Ripeness occurs when a case matures to a point that

it warrants a decision, 13B Charles A. Wright, Arthur R. Miller & Edward H. Cooper,

Federal Practice and Procedure—Civil § 3532, at 365 (3d ed. 2008).  Ripeness is determined when the issue is fit for judicial decision and the hardship to the parties of withholding court consideration, id. at 369; Pacific Gas & Elec., supra, 461 U.S. at 201 (quoting Abbot Labs. V. Gardner 387 U.S. 136, 148049 (1967)).

The Town's argument, however, is one of standing (see Docket No. 16, Def. Sur-Reply at 8), see Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (constitutional minimum for standing plaintiff must have suffered an injury in fact, causally connected with conduct complained of, and it is likely and not speculative that injury would be redressed by favorable decision).

### 5.  Abstention

Abstention doctrines often involve the federalism interaction of federal Courts with state courts, see generally 17A Charles A. Wright, Arthur R. Miller, Edward H. Cooper, and Vikram D. Amar, Federal Practice and Procedures--Jurisdiction § 4241, at 306 (3d ed. 2008).  The doctrine is the by-product of potential concurrent jurisdiction between the federal judiciary and the state courts or administrative agencies.  Commentators describe four types of abstention recognized by the courts:  Pullman (Railroad Comm'n of Tex. v. Pullman Co., 312 U.S. 496 (1941)) avoidance of federal constitutional question when case can be decided on state law; Burford (Burford v. Sun Oil Co., 319 U.S. 315 (1943)) abstention in favor of state administration of its laws (including state agency action); abstention for unsettled questions of state law; and Colorado River (Colorado River Water Conserv. Dist. v. United States, 424 U.S. 800, 818-19 (1976)) abstention to avoid duplicative federal and state litigation, id. at 295-98, 315-18.  Abstention doctrine is for sound judicial administration in the context of "duplicative, concurrent federal-state

litigation," 17A Moore's Federal Practice Ch. 122, Synopsis (emphasis added) (2020). This applies when there is a state court proceeding pending, Aurelius Capital Master, Inc. v. MBIA Ins. Corp., 695 F. Supp. 68, 73 (S.D.N.Y. 2010) (emphasis added).

The Colorado River doctrine, cited by the Town (see Docket No. 14, Def. Memo. at 34-36), addresses parallel, duplicative litigation; for example, a repetitive lawsuit where a plaintiff files the same suit in federal and state courts, see 17A Moore's Federal Practice, supra, § 122.90. Colorado River abstention is exceptional, and this Court has a duty to adjudicate matters properly before it, Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist., 673 F.3d 84, 100 (2d Cir. 2012); see also 17A Moore's Federal Practice, supra, § 122.91. Exceptional circumstances for exercising Colorado River abstention are determined by review of six factors, including the presence of a federal law issue, and whether the state forum would adequately protect the parties' interest, see Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 25-26 (1983); see also 17A Moore's Federal Practice, supra, § 122.92.

Another recognized basis for abstention is to avoid deciding unsettled questions of state law where there is a proceeding pending before a state administrative agency as a matter of deference to that agency, Burford, supra, 319 U.S. 315. Such deference to state agency procedures is appropriate in some circumstances, 17A Moore's Federal Practice, supra, § 122.50. Here, however, there is no question of state law being raised or a state agency being directly involved (despite Plaintiffs' dispute with the DEC regarding the Clean Water Act water quality certification for this project).

Burford requires that

"Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of

state administrative agencies: (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern,"

New Orleans Pub. Serv., Inc. v. Council of New Orleans, 491 U.S. 350, 361 (1989); see 17A Moore's Federal Practice, supra, § 122.52.  "The Second Circuit looks at several factors to determine the applicability of Burford abstention, including (1) the degree of specificity of the state regulatory scheme, (2) the need to give one or another debatable construction to a state statute, and (3) whether the subject matter of the litigation is traditionally one of state concern," 17A Moore's Federal Practice, supra, § 122.56, citing Planned Parenthood of Dutchess-Ulster, Inc. v. Steinhaus, 60 F.3d 122, 127 (2d Cir. 1995).

Federal courts have the discretion in these abstention contexts to abstain and decline the exercise of jurisdiction, Niagara Mohawk, supra, 673 F.3d 100-01.  Abstention, like preemption, is generally disfavored with federal courts having a "'virtually unflagging obligation' to exercise their jurisdiction," id. at 100 (quoting Colorado River, supra, 424 U.S. at 817).  In the purported parallel federal litigation/state administrative agency situation, deference to the state agency may not necessarily occur.  In Zablocki v. Redhail, 434 U.S. 374, 379 n.5 (1978), the Court did not abstain from a constitutional challenge to a requirement for issuance of marriage licenses that child support payments be current.  As noted by one commentator, "the Court explained that in contrast to Burford, the case did not involve complex issues of state law, resolution of which would be disruptive to state efforts to establish a coherent policy with respect to a matter of substantial public

concern," or that resolution of the federal question might result in overturning a state policy, 17A Moore's Federal Practice, supra, § 122.51.

Abstention also is not available if this Court has exclusive jurisdiction over the matter, id., § 122.06.

### 6. Exhaustion of Administrative Remedies

Finally, courts generally expect a party challenging agency action to first exhaust available administrative remedies, 33 Charles A. Wright, Charles H. Koch, Jr., and Richard Murphy, Federal Practice and Procedure § 8363, at 214 (2d ed. 2018). It "serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency," McCarthy v. Madigan, 503 U.S. 140, 145 (1992). Distinct from finality, "the exhaustion requirement generally refers to administrative and judicial procedures by which an injured party may seek review of an adverse decision and obtain a remedy if the decision is found to be unlawful or otherwise inappropriate," Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172, 193 (1985); 33 Federal Practice and Procedure § 8363, at 215. Exhaustion may be imposed by statute, regulation, or by court decision, 33 Federal Practice and Procedure § 8363, at 215. Exhaustion is an affirmative defense and can be waived, id. at 216. Absent (as with the Natural Gas Act) a statutory exhaustion requirement, courts "apply a prudential, judicially-developed form of the doctrine [of exhaustion] that generally contemplates that litigants should exhaust administrative remedies but also allows judicial discretion to excuse this requirement," id. at 220-21 & n.29; see McCarthy, supra, 503 U.S. at 144.

B.  Summary Judgment and Facts

This Court first must determine if there are material issues of fact in Plaintiffs' summary judgment motion.  The Town did not file a Rule 56 statement opposing the facts asserted by Plaintiffs in their motion for summary judgment.  Instead, the Town now cite to facts asserted in its Memoranda (Docket No. 16, Def. Sur-Reply at 1-2, 4; see Docket No. 14, Def. Memo. at 11-21).  This Court's Local Civil Rule 56, however, requires opponent to summary judgment like the Town to submit a response to each numbered statement Plaintiffs claim are facts not in dispute; absent such an opposing statement "the moving party's statement of material facts may be deemed admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the opposing statement," W.D.N.Y. Loc. Civ. R. 56(a)(2).  The purpose of this rule is to provide to this Court what the parties believe to be the uncontroverted and controverted facts with reference to materials in the records supporting that factual assertion.  The Town is correct that Federal Rule 56(c)(1) does not specify the manner for an opponent to raise material issues of fact (see Docket No. 16, Def. Sur-Reply at 1); this Court by local rule (Local Civil Rule 56(a)(2)) has specified the appropriate method.  The Town has not followed that method; instead the Town asserted its version of the facts within legal memoranda and attached exhibits (see Docket No. 14, Def. Exs. A-H; Docket No. 16, Def. Sur-Reply, Ex. A).  Therefore, the facts alleged by Plaintiffs not to be in dispute will be **deemed admitted**, despite contrary arguments raised by the Town in unsworn Memoranda of Law.

C.  Preemption

In <u>Oneok</u>, the parties contested whether the Natural Gas Act preempted the field of gas price regulation to preclude state antitrust laws to apply to gas rate setting.  No one claimed that federal statute expressly preempted state law or that the state suits conflicted with federal law.  <u>Oneok</u>, <u>supra</u>, 575 U.S. at 377; <u>see id.</u> at 390.  The Court held that Congress had not preempted the field to preclude state antitrust laws applying to natural gas rates, <u>id.</u> at 385, 387, 390 (<u>see</u> Docket No. 14, Def. Memo. at 29-31).  The Court then recognized that conflict preemption "should prove sufficient to address" any conflict between federal gas law and state antitrust law, noting that it was not at issue in that case because none of the parties argued conflict preemption, <u>id.</u> at 390, <u>see also</u> <u>id.</u> at 377.

Thus, the Town is correct that the Natural Gas Act does not expressly preempt local zoning and land use laws.  This Court need not determine whether the Natural Gas Act preempts the field for construction and maintenance of the infrastructure to transport natural gas in interstate commerce, <u>see</u> <u>Algonquin Gas Transmission</u>, <u>supra</u>, 919 F.3d at 63.  Preemption here falls under the narrower conflict preemption doctrine.

This Court in <u>Town of Wales</u>, applied the doctrine that "'matters sought to be regulated by [The Town] were [ ] directly considered by the FERC, . . . such direct consideration is more than enough to preempt [Town] regulation,'" 2013 WL 5739033, at *4 (quoting <u>Nat'l Fuel Gas Supply Corp. v. Pub. Serv. Comm'n</u>, <u>supra</u>, 894 F.2d at 579 (citing <u>Schneidewind</u>, <u>supra</u>, 485 U.S. 293)); <u>see also</u> <u>Islander E. Pipeline Co., LLC v. Connecticut Dep't of Envtl. Prot.</u>, 482 F.3d 79, 90 (2d Cir. 2006)).  This Court then held that the Town of Wales' noise ordinance permit was "plainly inconsistent and <u>in conflict with</u>—and thereby preempted by—the FERC Certificate," <u>Town of Wales</u>, <u>supra</u>,

26

2013 WL 5739033, at *4 (emphasis added).  As with the noise issue in Town of Wales, FERC here considered the disputed location for the compression station.  The Town of Pendleton's zoning regulations conflicts with FERC's approved determination for where that station is to be built as part of this interstate gas pipeline.

Both sides introduce facts about the merits (or lack thereof) of the FERC-approved Killian Road, Pendleton, New York, site for a gas compressor station (e.g., Docket No. 10, Pls. Statement ¶¶ 6, 7, 13-25; Docket No. 14, Def. Memo. at 18-21).  At issue here, however, is not whether one site in Pendleton or a site is another town is optimal.  FERC resolved that issue in approving Plaintiffs' application for the Killian Road site, considering siting issues in the environmental review, and affirming that determination in the Waiver Order, 164 FERC ¶ 61,084 ¶¶ 84-85, 2018 WL 3751716, at *21.  As detailed in Algonquin Gas Transmission, supra, 919 F.3d at 64, FERC regulations require the Commission to consider environmental, siting, safety factors when issuing a Certificate, including an environmental assessment, and require a pipeline developer to include with its application "all information necessary to advise [FERC] fully concerning the . . . construction . . . for which a certificate is requested," 18 C.F.R. § 157.5(a); Algonquin Gas Transmission, supra, 919 F.3d at 64.  That information includes the location and size of proposed facility and environmental reports on the projected local and environmental consequences, Algonquin Gas Transmission, supra, 919 F.3d at 64; 18 C.F.R. § 157.14(a)(6)-(7), with the environmental reports identifying (among topics) the land use, public health, safety, and aesthetic consequences of the project, Algonquin Gas Transmission, supra, 919 F.3d at 64; 18 C.F.R. § 380.12(j).

In the present case, FERC considered many of the topics the Town considers in zoning the parcel that is intended for the compression station.  The issue before this Court is whether federal law preempts local zoning and land use regulations regarding the siting of the compressor station.  This Court holds that the Town's zoning laws conflict with the FERC Certificate and is thus **preempted**.

The Town argues that the FERC's Certificate "is not a final decision until the conditions precedent to the Order are satisfied, and until National Fuel so certifies to FERC" (Docket No. 42, Def. Response Memo. at 2 n.1; see Docket No. 14, Def. Town Memo. at 38), contra Islander E. Pipeline v. Blumenthal, supra, 478 F. Supp. 2d at 295 (town permit requirements preempted by FERC certificate and order), implying that town permits and DEC water quality certificates were prerequisites to construction (hence town building permits).  First, Plaintiffs' conditions under this Certificate do not require the prior approvals the Town now argues, cf. 158 FERC ¶ 61,145 Ordering Paragraph (C), 2017 WL 496277, at *48.  As the New York State Court of Appeals recently noted in Schueckler, 2020 WL 3453939, at *6,

> "While it is true that the [Certificate] contains numerous 'conditions'—including, that of obtaining a water quality certificate and other pre-construction conditions that might affect the ultimate completion of the project—these conditions cannot reasonably be understood to render the certificate provisional . . . inasmuch as they are not conditions precedent to the validity of the certificate itself."

Next, finality of the FERC decision also is immaterial for determination of preemption; the preemption question remains whether the Town Code can alter, delay, or hinder this federal project (authorized by the Natural Gas Act) at whatever stage it might be.  If there is any finality applicable it is whether the Act of Congress is final.

The District of Connecticut held in its <u>Islander East Pipeline v. Blumenthal</u> case that "requiring plaintiff [pipeline company] to obtain a state [Structures, Dredging and Fill] permit for the pre-construction, construction, and operation of its federally authorized gas pipeline conflicts with FERC's orders certifying this project, and the permit requirement is therefore preempted by the federal [Natural Gas Act]," 478 F. Supp. 2d at 291.  There, the court held that the Connecticut Structures, Dredging and Fill Act conflicted with the comprehensive scheme for interstate natural gas sale under the Natural Gas Act and the exclusive jurisdiction the Natural Gas Act confers upon FERC, <u>id.</u> at 294.  Enforcement of the Structures, Dredging, and Fill permit would prohibit or delay the federal project, hence the District Court held that the permit requirement was preempted by the FERC Orders "which has 'exclusive jurisdiction over the transportation and sale of natural gas in interstate commerce for resale,'" <u>id.</u> at 295.

In this case, the Town's building permit is a similar delay or barrier to a federally approved natural gas project.  Thus, the Town's building permit here is also **preempted by the Natural Gas Act**.

This Court considered a similar FERC certificate order in <u>Town of Wales</u>, where that certificate order said that local permits needed to be consistent with the certificate and it did not "mean that state and local agencies may prohibit or unreasonably delay the construction or operation of facilities approved by the Commission," 2013 WL 5739033, at *2.  The Certificate in this case has nearly identical language (as stated above) (Docket No. 1, ¶ 10, Ex. A, Certificate, 158 FERC ¶ 61,145, ¶ 194, 2017 WL 496277, at *47).  As was held in <u>Town of Wales</u>, the defendant Town of Pendleton's permit here "is plainly inconsistent and in conflict with—and thereby preempted by—the FERC Certificate,"

29

2013 WL 5739033, at *4.  The fact that the Town of Wales considered a sound abatement provision in the FERC certificate is not distinguishing.  The point of the FERC certification process is to deem interstate pipeline projects as consistent with the Natural Gas Act and hence that Act preempts contrary state and local laws that may affect the project.

Therefore, Plaintiffs' Motion for Partial Summary Judgment (Docket No. 10) is **granted** on their preemption arguments.

D.  Exhaustion of Administrative Remedies

The Town points to three different areas it believes Plaintiffs failed to exhaust their administrative remedies before commencing this action:  the Town's zoning appeal process, the required state approvals, and the Certificate itself given Plaintiffs' appeal (Docket No. 14, Def. Memo. at 36-39; see Docket No. 16, Def. Sur-Reply at 7-9 (Plaintiffs lack DEC water quality certification to commence construction).

Considering first Plaintiffs' purported FERC appeal, they sought reconsideration on a rate setting issue that FERC resolved, 164 FERC ¶ 61,084, 2018 WL 3751716, rehearing denied, 167 FERC ¶ 61,007, 2019 WL 1981663.  As stated above in reviewing the administrative proceedings, plaintiffs did not appeal this decision to the D.C. Circuit, (see Docket No. 43, Pls. Memo. at 1-2), thus, that decision is final.  The matter pending before the D.C. Circuit is on the issue of the authority of FERC to toll orders when it lacked a quorum; no one here is challenging the legality of the Certificate based upon the composition of FERC.  Furthermore, Plaintiffs are not appealing FERC's decision before this Court to require exhaustion of administrative procedures before FERC.

As for the Town's contention that state approvals were a prerequisite for this suit, as the New York Court of Appeals found in Schueckler, supra, 2020 WL 3453939, at *6, the conditions within the Certificate are "not conditions precedent to the validity of the certificate itself."  FERC, in finding that the DEC waived and in denial of rehearing, the agency concluded that "Congress expressly provided for projects to move forward without state water quality certification when the state waives its authority," 167 FERC ¶ 61,007, ¶ 19, 2019 WL 1981663, at *5.  The First Circuit in Algonquin Gas Transmission rejected similar arguments that the FERC Certificate there was conditional hence somehow lacked preemptive effect, 919 F.3d at 65-66.  For the same reason that case was ripe, id., the court held that "FERC had conclusively and finally weighed the environmental, safety, and siting considerations associated with this project in its [Certificate], and FERC's determination that the project is necessary and in the public interest is at this point only 'conditional' in that it awaits" state permits that, under Massachusetts' process, required a town permit and, ultimately, decision on the question of preemption, id. at 66.

As for the Town's zoning appeal process, if federal law preempts (as was held above), the Town's administrative processes (including administrative or zoning board appeals of the denied building permit) are also preempted.

This Court agrees with Plaintiffs' argument (Docket No. 15, Pls. Reply Memo., at 5) that the Natural Gas Act does not have an exhaustion predicate before they could sue to enforce its preemptive effect over Town ordinances.  Thus, applying common law exhaustion principles, Plaintiffs exhausted when they obtained the Certificate.  This Court also accepts Plaintiffs' contention that there was no appeal from the FERC's decision

(see Docket No. 43, Pls. Atty. Decl. ¶ 2; id., Pls. Memo. at 1-2), hence any exhaustion of the FERC's decision-making process has been met.

      E.  Abstention

The Town analogizes FERC proceedings for a parallel state court proceeding that this Court should abstain in the face of the federal agency proceeding (see Docket No. 14, Def. Memo. at 33-36).  As Plaintiffs noted (Docket No. 15, Pls. Reply at 6-7), there is no pending parallel state court proceeding, thus Colorado River abstention is not applicable. Abstention doctrines arises from federalism and the relationship of federal judiciary with the states (either their judiciary or agencies).  What the Town appears to argue is ripeness and Courts traditionally decline to act when an agency decision is not final, and the matter is not ripe.

Possible abstention by federal Courts to not act in matters before federal agency is under separation of powers and depends upon the grants of jurisdiction by Congress to the Court and to the agency.  Conceptually, it would be exhaustion of administrative remedies that was discussed and dismissed above.  The Town has not cited authority for federal Courts abstaining in the face of pending federal agency action or showed that the Natural Gas Act gave FERC exclusive jurisdiction over pending administrative matters from judicial action.  Again, this lawsuit is not challenging FERC's action.

One court has rejected abstention in a similar circumstance, Midwestern Gas Transmission Co. v. McCarty, 270 F.3d 536, 537-38 (7th Cir. 2001) (Posner, J.).  A pipeline company there sought a declaration that FERC had exclusive jurisdiction over bypass

arrangements.  The Seventh Circuit reversed the district court abstention on <u>Younger v. Harris</u>, 401 U.S. 37, 43-53 (1971), grounds, <u>Midwestern Gas</u>, <u>supra</u>, 270 F.3d at 537-38.

<u>Burford</u> abstention also is not applicable, <u>see</u> New Orleans Public Service, <u>supra</u>, 491 U.S. at 362; <u>see also</u> <u>Sevigny v. Employers Ins. of Wausau</u>, 411 F.3d 24, 27 (1st Cir. 2005) (noting <u>New Orleans Public Service</u> "quite possibly concerned with a threat to the supremacy of the federal regulatory scheme if the meaning of the FERC order were left to state court interpretation on review of the city council order").  As with <u>New Orleans Public Service</u> (which involved rates set by FERC that plaintiff utility sought state agency permission to pass along in rate increases) this "case does not involve a state-law claim, nor even an assertion that the federal claims are 'in any way entangled in a skein of state-law that must be untangled before the federal case can proceed,'" <u>Burford</u>, <u>supra</u>, 491 U.S. at 361 (quoting <u>McNeese v. Board of Educ. For Community Unit School Dist. 187, Cahokia</u>, 373 U.S. 668, 674 (1963)); <u>see also</u> <u>Public Util. Comm'n of Ohio v. United Fuel Gas Co.</u>, 317 U.S. 456, 468-69 (1943) (state attempt to fix interstate gas rates enjoined on preemption grounds, abstention not justified).  Abstention is not required even if "resolution of a federal question may result in the overturning of a state policy," <u>Zablocki</u>, <u>supra</u>, 434 U.S. at 380 n.5; <u>New Orleans Public Service</u>, <u>supra</u>, 491 U.S. at 363.

Where applicable, abstention is discretionary, this Court recognizes that the norm is for judicial resolution of cases rather than avoidance by abstention.  This Court **declines to abstain here**.

33

F.  Ripeness

Finally, the Town argues that this action is not ripe since Plaintiffs lack final authorization to build the project.  The conditions in the Certificate need not be met before Plaintiffs can assert federal preemption, see Pacific Gas & Elec., supra, 461 U.S. at 198.

Alternatively, if finality is required, as provided in the supplementation FERC approved the project definitively on April 2, 2019, FERC Order Denying Rehearing, 167 FERC ¶ 61,007, 2019 WL 1981663 (Docket No. 40, Pls. Atty. Decl. ¶ 18, Ex. B).  In denying rehearing, FERC held that "Congress expressly provided for projects to move forward without state water quality certification when the state waives its authority" (id.; 167 FERC ¶ 61,007, ¶ 19, 2019 WL 1981663, at *5).

The Town argues that this case is like the Northern District of New York decision in Constitution Pipeline (Delaware Riverkeeper Network), slip op. Mar. 16, 2017 (Docket No. 16, Def. Sur-Reply at 7-9, Ex. B).  The plaintiff pipeline company in that case had pending a challenged water quality certification before the DEC, see Constitution Pipeline (Stop the Pipeline), supra, 868 F.3d 87.  The DEC also stated that other permits were pending.  Plaintiff disagreed and sought a declaratory judgment that the other state permits were preempted by the Natural Gas Act, Constitution Pipeline (Delaware Riverkeeper Network), supra, slip op. at 3.  As the Town notes here (Docket No. 16, Def. Sur-Reply at 8), Judge Norman Mordue for the Northern District of New York held that plaintiff had not alleged an actual injury for Article III standing because the DEC had yet to act upon the permit applications, id. at 13.  Inaction on plaintiff's permit was held not to constitute an actual injury for Article III subject matter jurisdiction, see id.  The plaintiff

there also had not pled an actual injury in fact because its injury claims were speculative, thus the Court lacked subject matter jurisdiction as well as plaintiff lacking standing.

Constitution Pipeline (Delaware Riverkeeper Network) is distinguishable. That action was a challenge to the DEC's denial of water quality certification. Plaintiffs' action here seeks a declaration about the Town's building permit and whether the Natural Gas Act preempts it for an approved gas pipeline project. Factually, that case and the one at bar are similar in that both sets of plaintiffs seek natural gas pipelines and have pending denial of DEC water quality certificates. The differences, however, between them are stark. In Constitution Pipeline (Delaware Riverkeeper Network), the DEC had not yet acted on the pipeline's application for water quality certification when Judge Mordue ruled thus depriving that plaintiff of an injury in fact, slip op. at 13. Plaintiffs here, however, have applied to the DEC and are appealing the denial of that water quality certification. Further, the proceeding that brings this case here is the Town's inaction and later denial of Plaintiffs' building permit (see Docket No. 1, Compl. ¶¶ 93-98, 105-12; see also id. ¶¶ 60-64, 74-75, 77-90), a ripe dispute. These Plaintiffs have alleged an injury in fact here, thus granting them standing.

Plaintiffs have multiple permits and applications before construction can begin on the pipeline and compression station. The FERC Certificate is conditioned upon obtaining these permits. Plaintiffs, however, do not gain standing (and their Complaint does not become ripe) upon merely receiving every other permit or approval save the Town's building permit. Plaintiffs' challenge here is whether the Town's permit process is preempted by the Natural Gas Act. Plaintiffs have standing to raise this challenge and

they need not wait until they have in hand every other permit required for construction and operation of the compression station and interstate pipeline.

The question of preemption here is ripe, see also Algonquin Gas Transmission, supra, 919 F.3d at 62-63.  The Town has denied a building permit.  Looking at the agency action (if necessary, to do so), the Certificate is final; any pending administrative action involves rate setting that does not involve the issue presented in this action—whether a town can deny a building permit for this federal gas line project.  Hence, claims arising from the Certificate are ripe.  Town has not shown that Plaintiffs needed to exhaust all permits required to construct and operate the compression station.

Therefore, Plaintiffs' action is ripe; Plaintiffs need not exhaust FERC, DEC, or Town administrative procedures prior to commencing this action challenging the applicability of the Town's permit process for a preemptive federal gas pipeline.

## IV.    CONCLUSION

The Natural Gas Act preempts the Town's land use ordinances to preclude the Town to prevent construction by denying a building permit.  Plaintiffs have standing to raise this preemption and raising it now is ripe.  Plaintiffs need not exhaust other remedies before commencing this action.  This Court will not exercise its discretion and abstain from hearing this case; instead, this Court will do its duty and adjudicate this case.

This Court **grants** Plaintiffs' Motion (Docket No. 10) for partial Summary Judgment. Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, this Court enters judgment declaring that defendant Town of Pendleton's building permit requirements are preempted by the Natural Gas Act and FERC proceedings issued thereunder for Plaintiffs'

FERC-approved gas pipeline project, see Islander E. Pipeline v. Blumenthal, supra, 478 F. Supp. 2d at 297, including the siting, construction and operation of the Pendleton compression station.

As was found in Town of Wales, supra, 2013 WL 5739033, at *6 and Islander East Pipeline v. Blumenthal, supra, 478 F. Supp. 2d at 297, the permanent injunction also sought by Plaintiffs here is **unnecessary**.  With the declaration of preemption, the substantive equitable dispute between the parties is resolved.  As with Town of Wales, supra, 2013 WL 5739033, at *6, there is no evidence that the Town of Pendleton will enforce the building permit requirement despite this Decision and Order; thus, Plaintiffs have not shown irreparable harm or that there is a threat of continuing violation if the Town enforced its building code requirements.  Therefore, so much of Plaintiffs' Motion for Partial Summary Judgment (Docket No. 10) is **denied** in seeking an injunction.

As a result, a status conference will be held on **Wednesday, August 26, 2020, at 2:15 pm** (by Zoom teleconference), to discuss what is left for determination in this action, including scheduling for briefing on Plaintiffs' claimed damages (see Docket No. 1, Compl. WHEREFORE Cl. (e), at page 25) and whether this Court should retain jurisdiction over this project (see id., WHEREFORE Cl. (d), at page 25).

Plaintiffs' latest motion (Docket No. 44) for leave to supplement authorities is **deemed moot**; this Court above referenced the New York State Court of Appeals decision in Schueckler, 2020 WL 3453939.

## V.    ORDERS

IT IS HEREBY ORDERED, that Plaintiffs Empire Pipeline, Inc., and National Fuel Gas Supply Corporation's Motion for Partial Summary Judgment (Docket No. 10) is GRANTED IN PART (granting declaratory judgment), DENIED IN PART (denying injunctive relief),

IT IS FURTHER ORDERED, that judgment be entered declaring that defendant Town of Pendleton's building permit requirements are preempted by the Natural Gas Act and FERC proceedings issued thereunder for Plaintiffs' FERC-approved gas pipeline project,

IT IS FURTHER ORDERED, that a status conference shall be held on **Wednesday, August 26, 2020, at 2:15 pm**, by Zoom teleconference.  Chambers will provide directions for attending this conference,

IT IS FURTHER ORDERED, that Plaintiffs' Motion for Leave to File Supplemental Authority (Docket No. 44) is **deemed moot**.

SO ORDERED.


Dated:        July 14, 2020
              Buffalo, New York


                                        s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                        United States District Judge